UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANDRE L. SHEFFIELD,

       Plaintiff,

v.                                Case No. 3:25-cv-951-MMH-SJH

SECRETARY RICKY D. DIXON,
et al.,

       Defendants.

_____

## <u>ORDER OF PARTIAL DISMISSAL WITHOUT PREJUDICE</u>

Plaintiff Andre L. Sheffield, an inmate of the Florida Department of Corrections (FDOC), is proceeding on a pro se Amended Complaint for Violation of Civil Rights under 42 U.S.C. § 1983 (Amended Complaint, Doc. 20), with attachments (Doc. 20-1). Plaintiff names the following individuals as Defendants: (1) FDOC Secretary Ricky D. Dixon (Dixon), in his individual and official capacity; (2) Warden David Allen (Allen), in his individual capacity; (3) Colonel William B. Blitch (Blitch), in his individual capacity; (4) Major Mason (Mason), in his individual capacity; (5) Sergeant Austin Fowler (Fowler), in his individual capacity; (6) Sergeant Patrick Williams (Williams), in his individual capacity; (7) Sergeant Davante Robinson (Robinson), in his individual capacity; (8) Captain Randall Smith (Smith), in his individual capacity; (9) John Doe 1,

in his individual capacity; (10) John Doe 2, in his individual capacity; and (11) Cynthia Russell (Russell), in her individual and official capacity. Doc. 20 at 2–7. Plaintiff raises First Amendment retaliation claims, Eighth Amendment deliberate indifference claims, and Fourteenth Amendment due process and equal protection claims based on events that took place on January 4–5, 2024, during his incarceration at Florida State Prison (FSP). See id. at 4, 8, 12.

The gravamen of Plaintiff's Amended Complaint is that an unjustified cell extraction[1] took place at FSP on January 5, 2024, during which Plaintiff was injured.[2] See id. at 12, 16–18, 20–24. According to Plaintiff, Defendants used excessive force against him or failed to intervene in the use of force. See id. at 16–18, 20–24. Plaintiff asserts Defendants' conduct was motivated by a private conspiracy to seriously injure him in retaliation for filing his lawsuit and grievances.[3] See id. at 8, 16–18, 20–24. Plaintiff further alleges that Fowler, Williams, Robinson, Smith, Mason, John Doe 1, and John Doe 2 personally participated in the cell extraction. Id. at 16, 18, 29. Fowler was the

---

[1] Plaintiff asserts that there was no disciplinary report against him to justify the cell extraction and resulting use of force. Doc. 20 at 18.

[2] Plaintiff had severe swelling in his face, head, rib cage, and back area; bleeding from his upper right-eye area; and three lacerations. Doc. 20 at 30–31.

[3] It appears that through this action, Plaintiff is realleging his excessive force claims from the January 4–5, 2024 incident, which the Court previously dismissed without prejudice for Plaintiff's failure to properly exhaust his administrative remedies. See Sheffield v. Doe, No. 3:24-cv-93-MMH-SJH, Doc. 101 (M.D. Fla. Jan. 16, 2025).

lead member of the extraction team, who grabbed Plaintiff's head and forcefully slammed it in a repeated bouncing motion onto the concrete floor while the other extraction team members blocked the hand-held camera with their bodies. Id. at 19–20. Williams was the second member of the team, who brutally punched Plaintiff in the head, neck, and face, and "personally sought to recruit gang members" to harm him. Id. at 8, 12, 20–21. Robinson, tail member of the extraction team, punched Plaintiff in the back while kneeling on his legs and obstructing the camera. Id. at 21–22. John Doe 1 and John Doe 2 were also part of the extraction team and personally used excessive force on Plaintiff while he was not resisting. Id. at 23–24. Mason and Smith directed the extraction team, and failed to intervene or stop the abuse. Id. at 18, 22–23. Blitch gave "the green light" for the cell extraction, and along with Dixon and Allen, in their supervisory roles, failed to intervene or stop the abuse. Id. at 14–17, 29. Further, Dixon failed to discipline all other Defendants for their alleged misconduct. Id. at 14, 29.

Plaintiff also raises a "protective management claim" against Russell based on an unrelated meeting that occurred on or about October 16, 2025. Id. at 25. According to Plaintiff, Russell denied his request for a protected status

based on his vulnerability to a "substantial risk of inmate-on-inmate attacks"[4] because of his juvenile sexual offense conviction, despite Plaintiff being housed alone on CM-1 (i.e., close management). Id. at 25–27. Plaintiff contends that Russell, in her supervisory role, refused to honor an FDOC policy allowing protection of any inmate with a criminal conviction repugnant to the inmate population. Id. at 26–27.

As relief, Plaintiff seeks: (1) actual and punitive damages against Dixon, Allen, Blitch, Mason, Smith, Fowler, Williams, Robinson, John Doe 1, and John Doe 2; (2) punitive damages against Russell; and (3) preliminary injunctive relief against Dixon and Russell, in their official capacities. Id. at 13–14, 27–28, 31–33.

The Prison Litigation Reform Act (PLRA) requires the Court to dismiss this case at any time if the Court determines that the action is frivolous, malicious, fails to state a claim upon which relief can be granted or seeks monetary relief against a defendant who is immune from such relief.[5] See 28 U.S.C. § 1915A(b). As to whether a complaint "fails to state a claim on which relief may be granted," the language of the PLRA mirrors the language of Rule 12(b)(6), Federal Rules of Civil Procedure, and therefore courts apply the same

---

[4] Plaintiff also claims he is "a vulnerable adult with an extensive prior mental health history." Doc. 20 at 17, 27–28.

[5] Plaintiff paid the full filing fee on September 3, 2025.

4

standard in both contexts.[6] Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997); see also Alba v. Montford, 517 F.3d 1249, 1252 (11th Cir. 2008).

Under the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. (8)(a)(2). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff still must meet some minimal pleading requirements. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Twombly, 550 U.S. at 555). Further, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. While not required to include detailed factual allegations, a

---

[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

complaint must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (alternation and internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678, 679. In the absence of well-pled facts suggesting a federal constitutional deprivation or violation of a federal right, a plaintiff cannot sustain a cause of action against the defendant.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) the defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Salvato v. Miley, 790 F.3d 1286, 1295 (11th Cir. 2015); Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citation omitted); Richardson v. Johnson, 598 F.3d 734, 737 (11th Cir. 2010) (per curiam) (citation omitted). Moreover, under Eleventh Circuit precedent, to prevail in a

6

§ 1983 action, a plaintiff must show "an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation." Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (citation omitted); Porter v. White, 483 F.3d 1294, 1306 n.10 (11th Cir. 2007).

In assessing the pleading, the Court must read Plaintiff's pro se allegations in a liberal fashion. Haines v. Kerner, 404 U.S. 519 (1972). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837, 839 (11th Cir. 2011)[7] (quoting GJR Invs., Inc. v. Cnty. of Escambia, Fla., 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), overruled in part on other grounds as recognized in Randall, 610 F.3d at 709).

Construing the allegations in the Amended Complaint liberally, the Court finds that Plaintiff's claims against Dixon, Allen, and Russell must be

---

[7] The Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when the Court finds them persuasive on a particular point. See McNamara v. GEICO, 30 F.4th 1055, 1060–61 (11th Cir. 2022); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

dismissed without prejudice for failure to state a claim. To the extent Plaintiff attempts to hold Dixon, Allen, and Russell liable for the actions or omissions of their subordinates, liability under § 1983 may not be premised on a theory of vicarious liability. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), abrogated in part on other grounds by Randall, 610 F.3d at 709; see also Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990) ("It is axiomatic, in [§] 1983 actions, that liability must be based on something more than a theory of respondeat superior."). To establish individual liability for supervisory conduct, a plaintiff must show "that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation." Keith v. DeKalb Cnty., 749 F.3d 1034, 1047–48 (11th Cir. 2014).

> Causation "may be established and supervisory liability imposed where the supervisor's improper custom or policy results in deliberate indifference to constitutional rights." Id.[8] (alterations adopted) (internal quotation marks omitted). "A plaintiff can also show that the absence of a policy led to a violation of constitutional rights." Piazza,[9] 923 F.3d at 957. "Either way, though, to prove that a policy or its absence caused a constitutional harm, a plaintiff must point to multiple incidents, or multiple reports of prior misconduct by a particular employee." Id. (citation omitted). And allegations of a single incident of unconstitutional conduct cannot state a claim for

---

[8] Hartley v. Parnell, 193 F.3d 1263 (11th Cir. 1999).

[9] Piazza v. Jefferson Cnty., 923 F.3d 947 (11th Cir. 2019).

8

> supervisory liability, even when the conduct involves several subordinates. Id. at 957-58.

Ingram v. Kubik, 30 F.4th 1241, 1254 (11th Cir. 2022).

Plaintiff's allegations do not suggest that Dixon, Allen, and Russell personally participated in the alleged constitutional violations or that there was a causal connection between their conduct and the alleged constitutional deprivations. Moreover, Plaintiff's allegations with respect to these Defendants are too general and conclusory to state a § 1983 claim based on their supervisory conduct. See Doc. 20 at 14–16, 25–27, 29. To the extent Plaintiff suggests that Russell was personally involved in the alleged constitutional deprivations by refusing to follow an FDOC policy allowing protection to inmates convicted of crimes repugnant to the inmate population, the conclusory allegations in the Amended Complaint are insufficient to state a claim for relief. See id. at 25–27. Notably, while Plaintiff suggests in the Amended Complaint that he has a juvenile sexual offense conviction, he notes in his Motion for Preliminary Injunction that FDOC staff "saw no sexual convictions in [his] file" to justify protected status. See Doc. 21 at 2–5. Further, to the extent Plaintiff alleges that Dixon, Allen, or Russell were deliberately indifferent because they were involved in Plaintiff's grievances, "filing a grievance with a supervisory person does not automatically make the supervisor liable for the allegedly unconstitutional conduct brought to light by

9

the grievance, even when the grievance is denied." Jones v. Eckloff, No. 2:12-cv-375-FtM-29DNF, 2013 WL 6231181, at *4 (M.D. Fla. Dec. 2, 2013)[10] (collecting cases).

Additionally, to the extent Plaintiff sues Dixon and Russell in their official capacities, the official-capacity claims must be dismissed for failure to state a claim. Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S 658, 690 n.55 (1978)); Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991). Thus, a suit against Dixon and Russell in their official capacities is equivalent to suing the FDOC itself, but the FDOC is not a "person" within the meaning of § 1983. Gardner v. Riska, 444 F. App'x 353, 355 (11th Cir. 2011). Moreover, the FDOC is immune from § 1983 liability for damages. Zatler, 802 F.2d at 400. Although injunctive relief may be available against the FDOC, Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509, 1511 (11th Cir. 1986), Plaintiff does not plausibly allege that any policy, custom, or practice of the FDOC was the moving force behind his

---

[10] The Court notes that although decisions of other district courts are not binding, they may be cited as persuasive authority. See Stone v. First Union Corp., 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

alleged constitutional violations. See Graham, 473 U.S. at 166 ("[A] governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation; thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law." (internal quotation marks and citations omitted)); Monell, 436 U.S. at 693–94 (concluding that municipal liability under § 1983 occurs "when execution of a government's policy or custom" is "the moving force" behind the constitutional violation).

Plaintiff's "policy or custom" allegations are nothing more than legal conclusions that "are not entitled to [an] assumption of truth." Iqbal, 556 U.S. at 678–79. Notably, while Plaintiff alleges that Russell refused to honor an FDOC policy, see Doc. 20 at 26–27, Plaintiff does not actually challenge the policy itself. See Mongeau v. JSO, 197 F. App'x 847, 852 (11th Cir. 2006) (affirming the dismissal of official-capacity claims against defendants where plaintiff alleged that defendants failed to properly follow their procedures but did not challenge the procedures themselves). Moreover, "failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000); see also Sandin v. Conner, 515 U.S. 472, 481–82 (1995) (noting that prison regulations do not confer rights or benefits on inmates but guide prison officials); Wilson v. Bussey, No. CV 113-054, 2014 WL 2040109, *5 (S.D.

11

Ga. May 12, 2014) (citing <u>Sandin</u>, 515 U.S. at 481–82) ("[A]n allegation of non-compliance with a prison regulation by prison officials is not, in itself, sufficient to give rise to a claim upon which relief may be granted.").

In addition, to the extent Plaintiff alleges that Defendants participated in a conspiracy to seriously injure or kill Plaintiff in retaliation for filing his lawsuit and grievances, in the Amended Complaint he does not allege facts sufficient to state a plausible claim for relief. To state a claim for conspiracy under § 1983, a plaintiff must allege that defendants "reached an understanding" to violate his constitutional rights. <u>Grider v. City of Auburn, Ala.</u>, 618 F.3d 1240, 1260 (11th Cir. 2010). "[T]he linchpin for conspiracy is agreement, which presupposes communication." <u>Bailey v. Bd. of Cnty. Comm'rs of Alachua Cnty., Fla.</u>, 956 F.2d 1112, 1122 (11th Cir. 1992). "It is not enough to simply aver in the complaint that a conspiracy existed." <u>Allen v. Sec'y, Fla. Dep't of Corr.</u>, 578 F. App'x 836, 840 (11th Cir. 2014) (quoting <u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11th Cir. 1984)). Here, Plaintiff offers nothing more than conclusory allegations of a conspiracy, which are insufficient to state a § 1983 conspiracy claim.

Further, to the extent Plaintiff attempts to bring a retaliation claim against Defendants, he has failed to adequately do so. "The core of [a retaliation claim brought pursuant to 42 U.S.C. § 1983] is that the prisoner is being retaliated against for exercising his right to free speech." <u>O'Bryant v.</u>

Finch, 637 F.3d 1207, 1212 (11th Cir. 2011) (per curiam) (citation omitted). It is firmly established that "an inmate is considered to be exercising his First Amendment right of freedom of speech when he complains to the prison's administrators about the conditions of his confinement." Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008). And it is firmly established that an inmate may pursue a cause of action against a prison official who retaliated against him for engaging in that protected speech. Id.

> To establish a retaliation claim, a prisoner must demonstrate "that the prison official's actions were the result of his having filed a grievance concerning the conditions of his imprisonment." Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003) (internal quotation marks and citation omitted). [A plaintiff] can prevail on a retaliation claim if "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." Smith, 532 F.3d at 1276.

Williams v. Radford, 64 F.4th 1185, 1192 (11th Cir. 2023) (internal citation modified). As to the third prong, a plaintiff must do more than make "general attacks" upon a defendant's motivations and must identify "affirmative evidence" of retaliation to prove the requisite motive. Crawford-El v. Britton, 523 U.S. 574, 600 (1998) (citations omitted). "In other words, the prisoner must show that, as a subjective matter, a motivation for the defendant's adverse

13

action was the prisoner's grievance or lawsuit." <u>Jemison v. Wise</u>, 386 F. App'x 961, 965 (11th Cir. 2010) (per curiam) (citation omitted). Plaintiff's Amended Complaint does not include any well-pled allegations of fact to suggest that Defendants' conduct during the cell extraction was in retaliation for Plaintiff's constitutionally-protected speech.

Based on the foregoing, the Court will dismiss without prejudice the claims in the Amended Complaint, except the excessive force claims against Fowler, Williams, Robinson, John Doe 1, and John Doe 2, and the failure to protect or intervene claims against Blitch, Smith, and Mason.[11] The Court will enter a separate order regarding service of process on these Defendants. Considering that Plaintiff's claims against Dixon and Russell will be dismissed without prejudice, the Court will deny as moot Plaintiff's Motion for Preliminary Injunction, which seeks an order directing Dixon and Russell to provide protective management status for the remainder of Plaintiff's sentence to minimize the risk of gang violence against him based on his juvenile sexual offense conviction, <u>see</u> Doc. 21 at 5–8.[12] Relatedly, the Court will deny

---

[11] It is unclear what claims Plaintiff intends to raise under the Fourteenth Amendment, but to the extent his constitutional claims are covered by a specific constitutional provision, such as the First or the Eighth Amendment, the claims must be analyzed under the standard applicable to that provision, rather than under the general substantive due process standard. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989).

[12] Plaintiff's Motion for Preliminary Injunction is also due to be denied because it does not seek to preserve the status quo. <u>See</u> <u>Ne. Fla. Chapter of Ass'n of Gen.</u>

14

Plaintiff's Motion for Leave to File Notice to the Court and Inquiry (Doc. 24), because it mistakenly asserts that the docket does not include Plaintiff's proposed "Order to Show Cause for Preliminary Injunction," see Doc. 24 at 1–2, which is actually attached to Plaintiff's declaration filed in support of the Motion for Preliminary Injunction, see Doc. 22 at 4–5.

Therefore, it is now **ORDERED**:

1.    The Amended Complaint (Doc. 20) is **DISMISSED without prejudice** as to all claims **except** the excessive force claims against Fowler, Williams, Robinson, John Doe 1, and John Doe 2, and the failure to protect or intervene claims against Blitch, Smith, and Mason.

2.    The Clerk shall **terminate** FDOC Secretary Ricky D. Dixon, Warden David Allen, and Cynthia Russell as Defendants in this case.

3.    A separate Order will enter regarding service of process on Sergeant Austin Fowler, Sergeant Patrick Williams, Sergeant Davante Robinson, John Doe 1, John Doe 2, Colonel William B. Blitch, Captain Randall Smith, and Major Mason.

---

Contractors of Am. v. City of Jacksonville, Fla., 896 F.2d 1283, 1284 (11th Cir. 1990) ("The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated."). "When a preliminary injunction is sought to force another party to act, rather than simply to maintain the status quo, it becomes a 'mandatory or affirmative injunction' and the burden on the moving party increases." Haddad v. Arnold, 784 F. Supp. 2d 1248, 1295 (M.D. Fla. 2010) (quoting Exhibitors Poster Exch. v. Nat'l Screen Serv. Corp., 441 F.2d 560, 561 (5th Cir. 1971)). Plaintiff cannot satisfy this burden.

15

4.      Plaintiff's Motion for Preliminary Injunction (Doc. 21) is **DENIED as moot**.

5.      Plaintiff's Motion for Leave to File Notice to the Court and Inquiry (Doc. 24) is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida, this 23rd day of April, 2026.

**MARCIA MORALES HOWARD**
Chief United States District Judge

Jax-11 4/1
c:      Andre L. Sheffield, #116194